Argued and submitted March 27, reversed and remanded with instructions on petition and cross-petition May 28, petition for review denied September 23, 1997
(326 Or 59)

June WICKS-SNODGRASS
and Jim Lewis,
*Respondents - Cross-Petitioners,*

*and*

Pauline SKINNER
and Bobby Beckley,
*Respondents - Cross-Respondents,*

*v.*

CITY OF REEDSPORT,
*Petitioner - Cross-Respondent.*

(95-240; CA A96236)

939 P2d 625

Bill Kloos argued the cause for petitioner - cross-respondent. With him on the briefs was Johnson, Kloos & Sherton, P.C.

Stephen Mountainspring argued the cause and filed the brief for respondents - cross-petitioners.

No appearance for respondents - cross-respondents.

Before Deits, Presiding Judge, and Richardson, Chief Judge, and Haselton, Judge.

DEITS, P. J.

**DEITS, P. J.**

Respondents Wicks-Snodgrass and Lewis[1] appealed to LUBA from petitioner City of Reedsport's decision allowing an application for a residential subdivision, together with certain related applications. The city's decision became final on November 6, 1995, but notice of it was not mailed to the parties pursuant to ORS 227.173(3)[2] until the next day. ORS 197.830(8) requires, as a prerequisite to LUBA's jurisdiction, that a notice of intent to appeal to LUBA from a local land use decision "be filed not later than 21 days after the date the decision sought to be reviewed becomes final." Respondents filed their appeal to LUBA on the 21st day after the city's notice was mailed and, thus, did not appeal the city's decision until the 22nd day after it was final. The city moved to dismiss the appeal for lack of jurisdiction. LUBA denied the motion. On the merits, LUBA sustained some of respondents' contentions, denied others, and remanded the decision. The city petitions for judicial review, and respondents cross-petition. Because we agree with the city that LUBA erred by denying its motion to dismiss, we reverse.

LUBA based its denial of the motion on its previous decisions holding that, under at least some circumstances, the time for appealing a local land use decision or limited land use decision is tolled until the local body provides notice of the decision to the appealing party. *Ramsey v. City of Portland,* 28 Or LUBA 763 (1994); *Forest Park Neighborhood Association v. City of Portland,* 27 Or LUBA 215 (1994). The tolling principle that LUBA applied has its genesis in this court's decision in *League of Women Voters v. Coos County,* 82 Or App 673, 729 P2d 588 (1986). We reasoned there that ORS 197.830(8) (then codified as ORS 197.830(7)) must be read together with the notice requirement in ORS 215.416(10) (which was then codified as ORS 215.416(8) and which duplicates the city notice requirement in ORS 227.173(3)). We concluded that

---

[1] Respondents Skinner and Beckley have not appeared in this court. We refer to the appearing respondents only by that designation in the remainder of this opinion.

[2] That statute requires that "[w]ritten notice of the [decision] shall be given to all parties to the proceeding."

"the variety and informality of local recordkeeping procedures give the decisionmaking bodies and their agents the familiarity that the parties who appear before them do not have with where the information resides in their courthouses and city halls. Although we suggest no evil motivation in this or in the generality of cases, the relationship between parties who seek to appeal a county's land use decision and officials of the county is hardly the same as the relationship between [a court] clerk and the parties to a civil action. In the land use context, the county is the deciding body as well as the recordkeeper. Counties are always nominally, and are often in fact, adverse parties to the appellant in appeals to LUBA from their decisions. The peculiar ability of county officials to know whether and when a decision has been made and where it can be found, together with their interest in the decision, makes their statutory duty to give notice of the decision almost fiduciary in nature. We do not think that the legislature intended to permit the nonperformance or delayed performance of that duty to defeat the possibility of a timely appeal from a county's land use decision.

"The language of the statutes is consistent with our understanding of the legislative intent. The requirements of both ORS 197.830(7) and ORS 215.416(8) are phrased as absolutes, and neither statute refers to the requirements of the other. Although ORS 197.830(7) specifies that the 21-day appeal period runs from 'the date the decision sought to be reviewed becomes final,' we do not think that the legislature contemplated that the simple ministerial act of giving the notice required by ORS 215.416(8) would not routinely occur on the same date. * * *

"We hold that, in all LUBA cases to which ORS 215.416(8) applies, the decision becomes final for purposes of appealing to LUBA under ORS 197.830(7) only after the prescribed written notice of the decision is mailed or delivered personally to the party seeking to appeal.[4]

---

"[4] We do not now construe any other statutes relating to notice of local decisions." 82 Or App at 679-81. (Some footnotes omitted.)

Respondents argue, in essence, that *League of Women Voters* controls here, and the city answers that that

opinion should not be extended to reach these facts. The city asserts that its decision here was a limited land use decision and that the notice and time for appeal considerations in connection with it therefore differ from those that applied in connection with the permit land use decision in *League of Women Voters*. *See, generally*, ORS 197.195.

Respondents counter with at least two points. First, they assert that this was *not* a limited land use decision.[3] Respondents' second argument is based on the fact that ORS 197.830(8) was amended after we decided *League of Women Voters* to provide, in material part, that the appeal of a "land use decision *or limited land use decision* shall be filed not later than 21 days after * * * the decision sought to be reviewed becomes final." Or Laws 1991, ch 817, § 7 (language added by amendment emphasized). Respondents derive two points from that fact. First, they assert that limited land use decisions are subject to the same time for and conditions of appeal as land use decisions and, therefore, are subject to *League of Women Voters*. Second, under the doctrine that the legislature is deemed to be familiar with case law and to accept judicial interpretations of statutory language that it either leaves unchanged or readopts, *see State v. Waterhouse*, 209 Or 424, 307 P2d 327 (1957), the 1991 amendment evidences a legislative acceptance of *League of Women Voters* by reenacting the relevant language of the statute without change.

The city also relies on the principle of legislative familiarity and acceptance. It bases its reliance on the fact that the following language was also added to ORS 197.830(8) after our decision in *League of Women Voters*:

> "A notice of intent to appeal plan and land use regulation amendments processed pursuant to ORS 197.610 to 197.625 shall be filed not later than 21 days after the decision sought to be reviewed is mailed to parties entitled to notice under ORS 197.615." Or Laws 1987, ch 729, § 16.

---

[3] In its earlier ruling on the motion to dismiss, LUBA presupposed that the city made a limited land use decision. In its decision on the merits, LUBA concluded that the city had not proceeded under statutory or local provisions applicable to limited land use decisions and that its action was therefore a land use decision. Given the basis for our decision, it is unnecessary for us to decide which kind of decision is involved here or whether and how the apposite requirements differ.

The city reasons that the legislature knew how to make notice rather than finality the event that initiates the appeal time when it wished to do so and, being presumptively aware of *League of Women Voters*, it made notice the relevant event for a narrow and different category of land use decisions while retaining finality as the relevant event in connection with the kinds of decisions involved here and in *League of Women Voters* itself.

Whatever the intrinsic merit or lack of merit the concept of legislative knowledge and acceptance may have, it is not particularly helpful here. That is so because the legislative actions after *League of Women Voters* support two opposite conclusions equally well. The 1987 amendment *could* have the significance that the city attaches to it. However, it could also mean the converse, *i.e.*, when enacting the provision making notice the event that starts the appeal time for plan and regulation amendments, the legislature considered it unnecessary to amend the existing language of the statute to explicitly say the same thing with regard to other land use decisions *because* it knew that we had already given the existing language that meaning in *League of Women Voters*. Accordingly, we place little reliance on this concept.

The city also argues that the purposes underlying our decision in *League of Women Voters* are not present here and, accordingly, the application of our holding in that case is not appropriate here. In *League of Women Voters*, the county's notice of the decision was not provided to the appellant until 21 days after it was made. Here, conversely, notice was given the day after the decision, but respondents nevertheless allowed 21 *more* days to pass before perfecting their appeal. Therefore, the city concludes, this case presents no necessity for preventing abuses of the kind at which it understands *League of Women Voters* to have been aimed. There is merit to that argument, but there are also difficulties with it.

Our holding in *League of Women Voters* was not and cannot readily be tailored to the facts of specific cases, and we specifically said that one of our objectives was to eliminate the futile practice in which we had theretofore engaged "of attempting to deal with [the problem] on a case-by-case basis." *Id.* at 681. Moreover, subsequent decisions by LUBA

and us have demonstrated that the rationale of *League of Women Voters* cannot be logically limited even to the statutory category of cases to which we ostensibly confined it. *See Lloyd Dist. Comm. Assn. v. City of Portland*, 141 Or App 29, 916 P2d 884, *rev den* 324 Or 322 (1996); *Tournier v. City of Portland*, 16 Or LUBA 546 (1988).

However, the fundamental problem with *League of Women Voters* is not that its reach goes beyond the needs of its policy considerations, but that it seems in retrospect to have given inappropriate weight to *any* policy considerations rather than to the language of the statute that we were required to interpret. ORS 197.830(8) is clear in its material respects and it makes the finality of the decision, not the local government's giving of notice, the event from which the time runs for appealing to LUBA.[4] The notice provisions of ORS 227.173(3) and ORS 215.416(10) have nothing to do with when a decision becomes final and appealable, and we were wrong in *League of Women Voters* in relying on those statutes as support for the proposition that the time for appealing a local decision is tolled beyond the time that ORS 197.830(8) clearly specifies.

In *Crist v. City of Beaverton*, 143 Or App 79, 84, 922 P2d 1253 (1996), we included *League of Women Voters* in an enumeration of decisions by this court that implement the general statutory process in which "errors in a land use decision" *and* "failure[s] by local governments to follow substantive or procedural requirements for a land use decision" are reviewable by LUBA. Relatedly, we also cited *League of Women Voters*, along with other cases, in *Kalmiopsis Audubon Society v. Curry County*, 131 Or App 308, 312 and n 1, 884 P2d 894 (1994), *rev den* 320 Or 567 (1995), as an example of LUBA's and our ability to provide suitable redress in situations where tactics are employed "to evade review or * * * abort * * * procedural rights." *See also Tarjoto v. Lane County*, 137 Or App 305, 310, 904 P2d 641 (1995).

Although we adhere to those general propositions and to the other cases cited in *Crist* and *Kalmiopsis Audubon*

---

[4] "Finality" is defined, for purposes of the statute, by LUBA's rule codified as OAR 661-10-010(3). There is no question in this case about whether and when the city's decision became final.

*Society* as illustrations of their implementation, *League of Women Voters* differs from the other cases in a fundamental respect. It relates to a statute that is "jurisdictional" in the most basic of senses, *i.e.*, if its time requirement is not met, *no* further inquiry by LUBA or us is permissible. *Compare Southwood Homeowners v. City Council of Philomath*, 106 Or App 21, 806 P2d 162 (1991) (some jurisdictional exclusions in ORS 197.015(10)(b) necessitate that LUBA conduct substantive review if necessary to determine whether the conditions for exercising or excluding jurisdiction are present).

Although there may well be sound policy reasons in support of our holding in *League of Women Voters*, our reading of ORS 197.830(8) was contrary to the language of the statute. Accordingly, we overrule it. For the same reasons, LUBA was incorrect here. We hold that the time for respondents to appeal ran from the time that the city's decision became final, that their appeal was not timely filed, and that LUBA lacked jurisdiction over it.[5]

Our holding on the petition makes separate discussion of the cross-petition unnecessary.

On petition and cross-petition, reversed and remanded with instructions to dismiss petition.

---

[5] Although in no way directly applicable here, the decisions concerning whether notice of the entry of a judgment is a prerequisite to the running of the time period for filing an appeal to this court have reached a result similar to our holding here. In *Far West Landscaping v. Modern Merchandising*, 287 Or 653, 601 P2d 1237 (1979), and *Junction City Water Control v. Elliott*, 65 Or App 548, 672 P2d 59 (1983), it was held that the failure of a county clerk to give a party required notice of the entry of a trial court judgment, ORCP 70B, does not extend the time for appealing the judgment.