Argued and submitted March 6, 2014, affirmed January 22, petition for review denied July 30, 2015 (357 Or 595)

STATE ex rel Mel STEWART,
*Relator-Appellant,*

*v.*

CITY OF SALEM,
an Oregon municipal corporation,
*Defendant-Respondent.*

Marion County Circuit Court
09C13661; A151153

343 P3d 264

John W. Shonkwiler argued the cause for appellant. On the briefs was William F. Hoelscher.

Kenneth S. Montoya argued the cause for respondent. On the brief was Daniel B. Atchison, Assistant City Attorney.

Before Duncan, Presiding Judge, and Haselton, Chief Judge, and Lagesen, Judge.*

HASELTON, C. J.

--------

* Haselton, C. J., *vice* Wollheim, S. J.

## HASELTON, C. J.

This matter is before us for a second time. *See State ex rel Stewart v. City of Salem,* 241 Or App 528, 251 P3d 783 (2011) (*Stewart I*). Relator, in a mandamus proceeding, appeals from a judgment that, in pertinent part, denied his request for attorney fees incurred in ultimately, successfully obtaining a peremptory writ. ORS 34.210(2). We affirm.[1]

As recounted in *Stewart I*, 241 Or App at 531-32, this litigation arose from defendant City of Salem's (the city) failure to take "final action" on relator's partition application "within 120 days after the application is deemed complete." ORS 227.178(1).

Relator filed his partition application in October 2008. In response, the city sent relator a letter asking him to provide certain missing information. Relator replied by providing some of the requested information, stating that no other information would be forthcoming and declaring that the city should consider his application "complete." The city received that letter on December 2, 2008. On December 4, 2008, relator sent the city a second, alternative partition plan. The city responded by telling relator that it could not process both plans at the same time and asking which of the two plans relator would like the city to consider; the city also informed relator that it would proceed to consider the original proposal if he did not respond in writing by December 11. In a December 8 voicemail, relator told the city to proceed on the original proposal. The city's planning division subsequently approved the proposal, but that decision was overturned by a March 30, 2009, city council vote.

Despite the vote denying the application, the city had not issued a final written decision memorializing that decision as of April 1. On April 2, relator petitioned the trial court for an alternative writ of mandamus that would direct

---

[1] In a separate appeal that was consolidated for oral argument—which also arises from the same protracted litigation between relator and defendant City of Salem—relator appeals from a judgment dismissing, by way of summary judgment, his action to recover damages based on the city's alleged filing of a "false return," ORS 34.210(1), in the predicate mandamus proceeding. *State ex rel Stewart v. City of Salem (A153321),* 268 Or App 717, 344 P3d 567 (2015).

the city to approve his application pursuant to ORS 227.179, which provides, in part:

"Except when an applicant requests an extension * * *, if the governing body of a city or its designee does not take final action on an application for a permit, limited land use decision or zone change within 120 days after the application is deemed complete, the applicant may file a petition for a writ of mandamus under ORS 34.130 in the circuit court of the county where the application was submitted to compel the governing body or its designee to issue the approval."

Relator asserted that the 120-day deadline for the city to take a "final action" had passed because, under ORS 227.178(2),[2] his application was "deemed complete" for purposes of ORS 227.178(1) and ORS 227.179 when the city received his December 2, 2008, response to its request for more information and that his subsequent submission and retraction of an alternative proposal had no effect on the 120-day clock. On April 2, 2009, the trial court ordered the court clerk to issue the alternative writ, which directed the city to either grant relator's application or to show cause to the court for not doing so. On April 6, 2009—125 days from December 2, 2008—the city issued a final written order denying the application. *Stewart I*, 241 Or App at 532.

In May 2009, the city responded to the writ by filing a "Motion to Dismiss Order for Writ of Mandamus and Motion to Dismiss Petition for Writ of Mandamus." That motion was predicated on the city's contention that "[t]he 120 day state mandated deadline for the challenged decision had not expired when the order was issued." In the city's

---

[2] ORS 227.178(2) specifies when an application is "deemed complete":

"If an application for a permit, limited land use decision or zone change is incomplete, the governing body or its designee shall notify the applicant in writing of exactly what information is missing within 30 days of receipt of the application and allow the applicant to submit the missing information. The application shall be deemed complete for the purpose of subsection (1) of this section upon receipt by the governing body or its designee of:

"(a) All of the missing information;

"(b) Some of the missing information and written notice from the applicant that no other information will be provided; or

"(c) Written notice from the applicant that none of the missing information will be provided."

view, the 120-day time limit had not expired at the time that relator petitioned for the writ—and would not do so until at least April 7, 2009 (*i.e.*, 120 days from the date that relator had told the city to proceed with his original proposal and to disregard the second one). Thus, the city asserted, relator's petition had been filed prematurely and should be dismissed. The trial court agreed with the city and dismissed both the mandamus petition and the writ for the reason urged by the city. *Id.* at 532-33.

Relator appealed that dismissal and, in *Stewart I*, we reversed and remanded. Our disposition turned on when relator's application was deemed complete within the meaning of ORS 227.182(2). After analyzing the relevant statutes, we concluded that relator was correct:

> "[R]elator submitted an application for a partition in October 2008, after which the city, pursuant to ORS 227.178(2), informed him that additional information was needed. On December 2, 2008, the city received a letter from relator that included the information required to deem his application complete under ORS 227.178(2)(b), including a written request by relator that the city 'consider my application complete by operation of law.' Relator did not, at any time, request an extension of the 120-day deadline pursuant to ORS 227.178(5). Relator's voicemail response to the city's December 4 letter clarified that he wished to proceed with his first proposed plan, which already had a 'deemed complete' date of December 2. Relator's application was thus complete on December 2, setting the 120-day deadline for April 1, 2009. Because the city had not yet taken final action on relator's application by April 1, relator's mandamus petition was properly filed pursuant to ORS 227.179(1). The trial court erred in dismissing relator's petition for writ of mandamus."

*Stewart I*, 241 Or App at 535-36.

Accordingly, we reversed the judgment dismissing the petition and remanded the case for the trial court to issue the writ. After our opinion in *Stewart I* issued, relator petitioned for an award of his appellate attorney fees, which we granted without amplification.

Following our remand, the city asserted, as an affirmative defense, that approval of relator's application

would result in a substantive violation of the Salem City Code and that the writ should not issue for that reason. The parties also sparred over which conditions of approval should be specified in the peremptory writ. *See* ORS 227.179(5) ("The court shall issue a peremptory writ unless the governing body * * * shows that the approval would violate a substantive provision of the local comprehensive plan or land use regulations * * *. The writ may specify conditions of approval that would otherwise be allowed by the local comprehensive plan or land use regulations."). The trial court ultimately issued a peremptory writ directing the city to approve relator's partition plan, subject to certain conditions.

In that context, relator moved in the trial court for an award of attorney fees incurred in litigating the issuance of the peremptory writ and the conditions that would attach thereto. Relator invoked ORS 34.210(2), which authorizes a prevailing party in a mandamus proceeding to recover attorney fees under certain conditions.

The trial court, without expressly designating a prevailing party, awarded relator all of his requested costs, with the exception of expert witness fees, but denied relator's request for attorney fees. In so ruling, the trial court explained that both parties "had legitimate issues to present and professionally presented them" and that there was an absence of "groundless * * * inappropriate or invalid arguments" during the litigation—and, indeed, found that "all the lawyers involved in this case in front of me [were] responsive, professional, and did an excellent job," "did try to resolve this, * * * were diligent and reasonable in their activities in this courtroom," and "were helpful in reducing some of the issues for hearing." The trial court further observed that, although the city ultimately lost on appeal, it had prevailed before the circuit court, and the dispute involved a good faith disagreement over an issue that had not been litigated previously and was not directly addressed in the statutory scheme. Thus, the court "certainly didn't see any basis * * * [to find that the city] was reckless or willful," nor was there any evidence of a pattern of inappropriate, reckless, or illegal conduct.

The trial court subsequently entered an order that expressly adopted the city's arguments in its opposition to the fee petition and determined that (1) "the conduct of [the city] that gave rise to the litigation was not reckless, willful, illegal or in bad faith," (2) the city's conduct during the litigation was "objectively reasonable and diligent," and (3) the city's claims and defenses were "objectively reasonable, valid and appropriate."

On appeal, relator contends that the trial court erred in denying his request for attorney fees pursuant to ORS 34.210(2). That statute provides, in part:

> "The court *in its discretion may* designate a prevailing party and award attorney fees, costs and disbursements to the prevailing party * * *. Attorney fees, costs and disbursements may only be awarded against adverse parties who have been served with the petition and writ."[3]

(Emphasis added.)

As we understand it, relator advances three overarching challenges to the denial of fees:[4] (1) The trial court was obligated to designate relator as the "prevailing party" and its failure to do so impermissibly skewed its determination not to award attorney fees; (2) our disposition of the petition for appellate attorney fees in *Stewart I* precluded the trial court from denying entitlement to fees incurred in the proceedings before that court; and (3) the trial court erroneously construed and applied various factors under ORS 20.075 in denying fees, and those alleged errors

---

[3] As noted, this matter was brought pursuant to ORS 227.179, which directs that a permit applicant may file a "petition for a writ of mandamus under ORS 34.130," a statute that is part of the general mandamus scheme in ORS chapter 34. In *State ex rel Aspen Group v. Washington County*, 150 Or App 371, 946 P2d 347 (1997), *rev den*, 327 Or 82 (1998), we stated that the attorney fee provision of ORS 34.210(2) applies in the context of a statutory mandamus action under *former* ORS 215.428(7)(b) (1999), which imposed a 120-day time frame for counties to act and is substantively indistinguishable from the mandamus provisions of ORS 227.179.

[4] Relator also originally assigned error to the trial court's denial of his motion to file his "false return" claim (which is the subject of the companion *Stewart* case and appeal) in the mandamus action and to "bifurcate" that claim from the mandamus proceeding. Relator subsequently, and correctly, acknowledged that the fact that he eventually brought and litigated his "false return" claim in a separate action rendered that assignment of error moot.

compel reversal (with a concomitant award of attorney fees to relator) or, at the very least, a remand for the trial court to reconsider and reexercise its discretion. For the reasons that follow, we reject relator's first two contentions and, while agreeing with relator as to one aspect of the third contention, conclude that affirmance, not remand, is warranted.

Relator's first challenge is unavailing, both factually and legally. As a factual matter, although the trial court was not obligated under ORS 34.210(2) to designate a prevailing party ("The court *in its discretion may* designate a prevailing party * * *." (Emphasis added.)), it is evident that, in substance, it so characterized relator. Specifically—in the same order in which it denied relator's fee petition—the court awarded relator's requested costs, with the exception of expert witness fees. Further, as a legal matter, "prevailing party" status under ORS 34.210(2) does not trigger a categorical entitlement to attorney fees. Rather, while the statutory text explicitly makes "prevailing party" status a prerequisite to any recovery of attorney fees, fee entitlement is permissive, predicated on the trial court's exercise of discretion. *See, e.g., State ex rel Pend-Air v. City of Pendleton*, 145 Or App 236, 246-51, 929 P2d 1044 (1996), *rev den*, 325 Or 45 (1997).

Relator's second challenge, pertaining to the purported (collaterally) preclusive effect of our award of appellate attorney fees in *Stewart I*, is similarly unavailing in that it fails to appreciate that our determination and the trial court's determination here involved two circumstantially distinct exercises of discretion. Most significantly, in *Stewart I*, our consideration was circumscribed by circumstances relating to the successful prosecution of the appeal, but here the trial court's consideration properly encompassed the entirety of the litigation, including post-remand circumstances. We note further that, to the extent that there was, necessarily, some circumstantial overlap between our consideration and the trial court's, the former is not innately conclusive of the latter. Except at its "matter of law" limits, "discretion" embodies a range of permissible outcomes, so that, even in identical circumstances, different tribunals

can, properly, reach different results.[5] *See State ex rel Pend-Air*, 145 Or App at 251 ("[T]he court could properly have either allowed or denied fees.").

We turn, finally, to relator's contention that the trial court's denial of attorney fees was based on an erroneous understanding or application of various factors specified in ORS 20.075(1). We reject without published discussion each of those challenges except for the three addressed immediately below.

ORS 20.075(1) provides:

"A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:

"(a) *The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.*

"(b) *The objective reasonableness of the claims and defenses asserted by the parties.*

"(c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.

"(d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

"(e) *The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.*

"(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

---

[5] Even where a discretionary award of fees is at issue, there may be instances where there is only one permissible legal outcome. *See State ex rel Aspen Group v. Washington County*, 166 Or App 217, 227, 996 P2d 1032 (2000) ("[T]he only legally permissible exercise of discretion was, and is, to deny fees." (Haselton, J., concurring)). Nothing in our order in *Stewart I* awarding relator his appellate attorney fees suggested that this was such a case.

"(g)   The amount that the court has awarded as a prevailing party fee under ORS 20.190.

"(h)   Such other factors as the court may consider appropriate under the circumstances of the case."[6]

(Emphasis added.)

Relator challenges the trial court's determinations with respect to ORS 20.075(1)(a), (b), and (e). To aid cogent analysis, we address the latter two challenges first and then, finally, address the trial court's application of ORS 20.075(1)(a).

Relator asserts that the trial court erred in determining, for purposes of ORS 20.075(1)(b), that the city's "claims and defenses were objectively reasonable, valid and appropriate." In that regard, relator asserts that the city's legal position in *Stewart I*—that the 120-day rule had not yet expired at the time that relator filed for mandamus—was objectively unreasonable. The determination of whether a claim or defense is "objectively reasonable" is a matter of law. *See Mantia v. Hanson*, 190 Or App 412, 430, 79 P3d 404 (2003) (reviewing award of attorney fees pursuant to ORS 20.105); *Secor Investments, LLC v. Anderegg*, 188 Or App 154, 175, 71 P3d 538, *rev den*, 336 Or 146 (2003). In *State ex rel Pend-Air*, in reviewing a denial of attorney fees under ORS 34.210(2), we reiterated the controlling standard:

> "'An interpretation will be deemed "reasonable" even though it is wrong if the interpretation has some basis in the language or the legislative history of the statute, or if the interpretation is consistent with some stated purpose of the scheme of which the statute is a part. When we reverse and remand in such a case because we have concluded that a different interpretation is the correct one, an award of an attorney fee will serve neither of the purposes we have ascribed to ORS 183.495. A fee award will not deter similar actions in the future, because reasonable misinterpretations are mistakes made in good faith rather than reckless or intentional decisions to adopt erroneous constructions. There is also less of a "fairness" justification for attorney fees in such cases.'"

---

[6] "[A]wards under ORS 34.210 are subject to the general guidelines for discretionary statutory attorney fees set forth in ORS 20.075." *State ex rel Coastal Management v. Washington Cty.*, 159 Or App 533, 543, 979 P2d 300 (1999).

145 Or App at 249-50 (quoting *Van Gordon v. Ore. Board of Dental Examiners*, 63 Or App 561, 568, 666 P2d 276 (1983)) (brackets in *Pend-Air* omitted).

Relator urges that our opinion in *Stewart I* necessarily established that the city's legal position regarding the timeliness of the mandamus petition was "unreasonable." We disagree.

It is true, as relator observes, that our opinion in *Stewart I* was unambivalent in its reasoning and holding. It is also true that, not infrequently, after having wrestled with close and difficult legal questions, we express the result confidently and unambiguously. *Stewart I* was such a case.

The circumstances in *Stewart I* relating to the application of the 120-day period were idiosyncratic. Indeed, we noted that "ORS 227.178 does not contemplate situations where, as here, the applicant takes an action after the application is 'deemed complete' that leaves the city in a position in which it is uncertain how to proceed[.]" 241 Or App at 535. Thus, the peculiar facts of the case presented an issue of first impression, one on which the trial court—not unreasonably—reached a different conclusion. *Accord State ex rel Pend-Air*, 145 Or App at 250-51 ("Relators prevailed, then, not because defendants' failure to act was grounded in an unreasonable interpretation of the law, but because the trial court resolved an extremely close issue of first impression in their favor." (Footnote omitted.)). Contrary to relator's suggestion, the ultimate legality of an action and the reasonableness of arguments advanced as to the legality of that action are not coterminous. The trial court did not err in concluding that the city's legal position in *Stewart I* was reasonable for purposes of ORS 20.075(1)(b).[7]

---

[7] We note, parenthetically, that, in asserting that it had six more days within which to take "final action" on relator's application, the city was not engaged in an effort to thwart the purpose of the 120-day rule in any meaningful way. *See State ex rel Compass Corp. v. City of Lake Oswego*, 319 Or 357, 541-42, 878 P2d 403 (1994) (stating that the "evident" policy behind the 120-day rule is to provide an "incentive for timely governmental action"). Before even April 1, 2009, the date that we determined marked the end of the 120-day window, the city council had rejected relator's application in a public forum; all that remained was to reduce that decision to the form of a "final action," an act that the city acknowledged would have to be completed by April 7.

Relator also contests the trial court's determination, by reference to ORS 20.075(1)(e), that the city's conduct "during the litigation was objectively reasonable, valid and appropriate." Relator contends that the answer that the city filed to the writ petition following our remand in *Stewart I* contradicts that determination. Again, we disagree.

ORS 227.179(5) provides:

"The court shall issue a peremptory writ unless the governing body or any intervenor shows that the approval would violate a substantive provision of the local comprehensive plan or land use regulations as those terms are defined in ORS 197.015. The writ may specify conditions of approval that would otherwise be allowed by the local comprehensive plan or land use regulations."

Pursuant to that statute, the city was entitled, on remand, to attempt to show that approval "would violate a substantive provision of the local comprehensive plan or land use regulations" and to urge that certain "conditions of approval" should issue as part of the writ. *See State ex rel Compass Corp. v. City of Lake Oswego*, 319 Or 537, 541, 878 P2d 403 (1994) ("If a governing body fails to take final action on an application within the required 120 days, the applicant is entitled to obtain an order compelling approval, *subject to defenses that the governing body must establish*." (Emphasis added.)).

Following *Stewart I*, the city filed an answer to the writ in which it argued that approving relator's application would result in a violation of its land-use regulations. That contention hinged, in part, on the city's assertion, also contained in its answer, that relator's southern property line was the "rear lot line" of his property within the meaning of a certain city code provision; relator argued that the western property line was the "rear lot line." The parties also differed over several proposed conditions of approval, although they were eventually able to come to agreement

Relator was, of course, entitled to the mandamus remedy afforded by statute. Nevertheless, in considering whether he should be awarded attorney fees in pursuing that action, the trial court could—and did—validly consider the city's argument that, consistently with the purpose of the 120-day rule, relator was not left in any state of suspense over the fate of his application.

on all of those except for the rear-lot-line issue.[8] The trial court heard witness testimony and received exhibits for the purpose of resolving that issue. The court issued a letter opinion concluding that, as a matter of interpretation of the city code as applied to the property, relator was correct that the western property line—and not the southern property line—was the rear lot line.

Given those circumstances, relator asserts that the city's conduct during the proceedings following our remand was not objectively "reasonable" for purposes of ORS 20.075(1)(e) and that the trial court could not legally conclude otherwise. Specifically, relator contends that the city's assertion in its answer that the southern property line was the "rear lot line" has, by virtue of the trial court's subsequent letter opinion, been revealed as a false statement of fact, and that the city acted unreasonably when it filed a false statement of fact.

We reject relator's challenge for either of two independently sufficient reasons. First, relator again proceeds from the false premise that judicial resolution of a contested issue necessarily renders the nonprevailing party's advocacy categorically "unreasonable." To the contrary, as the trial court observed, "as I see this, I think that * * * both parties presented legitimate issues to interpret what is a rear lot line in a nonrectangular lot with a disagreement by two parties, and both parties had, I believe, objectively reasonable arguments there." Second, relator's focus on the "rear lot line" identification matter fails to appreciate that the trial court's consideration properly embraced the totality of the circumstances of the litigation, including the parties' resolution of nine other conditions of approval on which the writ issued. *See* 268 Or App at 501-02.

We address, finally, relator's challenge to the trial court's conclusion regarding ORS 20.075(1)(a), *viz.*, that "the conduct of [the] defendant that gave rise to the litigation was not reckless, willful, *illegal* or in bad faith." (Emphasis added.) Relator asserts that, given our holding in *Stewart I*,

---

[8] Although the details are not of particular concern in this appeal, the rear-lot-line issue was apparently relevant to whether relator could erect buildings that did not comply with potentially applicable setback requirements.

the city had violated the 120-day rule by failing to take timely final action on relator's permit application and that conduct was *per se* "illegal" within the meaning of ORS 20.075(1)(a)—and that the trial court erred in stating otherwise. *See State ex rel Aspen Group v. Washington County*, 150 Or App 371, 379, 946 P2d 347 (1997), *rev den*, 327 Or 82 (1998) (stating, in a case where a county had failed to act on a relator's proposal for a subdivision plan within the statutory time frame, "the county's * * * conduct was—in [ORS 20.075(1)(a)'s] word—'illegal'"). The city does not dispute that the trial court so erred, but contends, nevertheless, that, in the totality of the circumstances on this record, remand is unwarranted. We agree.

We emphasize at the outset that "vacated and remanded for reconsideration" is the strongly presumptive disposition when a trial court has misconstrued or misapplied one or more considerations bearing on the exercise of discretion. *See, e.g., Mantia*, 190 Or App at 431 (remanding for reconsideration of discretionary award of prevailing party fee under ORS 20.190, where "the trial court exercised its discretion * * * based, in part, on a criterion that we have now determined was inapposite"); *see also Shumake v. Foshee*, 197 Or App 255, 261, 105 P3d 919 (2005) ("If * * * we determine that the court erred in arriving at one or more of its subsidiary legal conclusions or factual findings, we *ordinarily* will say so and then remand for reconsideration." (Emphasis added.)).

However, that course is (again) presumptive, not absolute:[9] The choice of disposition can, properly, be informed by prudential considerations, including comity with trial courts and conservation of judicial resources. Those considerations are implicated (as we have held in other, analogous contexts) when, assessing the trial court's error in the totality of "the trial court's findings and articulated reasoning," "[w]e are convinced * * * that the trial court's ultimate determination would not change were we to remand." *Kleinsasser and Lopes*, 265 Or App 195, 211-12, 333 P3d 1239

---

[9] *E.g., Shumake*, 197 Or App at 262 (noting that a remand would be inappropriate where, "on the facts of a particular case, our ruling means that there is only one legally permissible decision").

(2014).[10] That is, we will not rotely or whimsically elevate dispositional form over practical substance.

This is such a case. As described in detail above, 268 Or App at 495-96, the trial court, in declining to award attorney fees, determined that myriad considerations militated against such an award. Further, notwithstanding its misdenomination of the city's predicate conduct, it is manifest that the trial court was fully aware of the essential character of that conduct and, specifically, that the conduct violated ORS 227.178(1). Given the totality of the circumstances—that is, "the trial court's findings and articulated reasoning," *Kleinsasser*, 265 Or App at 212—a remand for reconsideration in this case, extending already protracted litigation, would serve no purpose.[11]

Affirmed.

---

[10] *Cf. Asato v. Dunn*, 206 Or App 753, 760, 138 P3d 914 (2006) (declining to remand for reconsideration, notwithstanding that one finding by the trial court was unsupported by any evidence; given that the trial court's "'primary'" and "'controlling'" factor was unchallenged, "the outcome on remand would be no different").

[11] We reject all other contentions by relator not explicitly addressed in this opinion.